CONGDON et al. v. THE ELEANOR.

(District Court, D. South Carolina.    June 3, 1890.)

SALVAGE—COMPENSATION.
    The schooner E. went ashore, and, failing in its efforts to get off, sent for the tugs C. and B.    The master of the C., which first arrived, refused to do anything because of the danger, but promised to come with the other tug the next morning.    Both tugs came down, and the E., having again made efforts to get off and failed, was towed into deep water, and into port.    The weather was calm during the whole time, and the E. was not in imminent danger, but a gale would have exposed her to great danger.    The tugs were at no time in danger.    The E. was valued at $16,000, and her cargo at $4,000, and the tugs at $20,000 and $15,000, respectively.    Held, that this was salvage service, and the tugs were each entitled to $300, to be assessed pro rata on the vessel, cargo, and freight.

In Admiralty.    Libel for salvage.
Smythe & Lee, for libelant.
I. N. Nathans, for claimants.

SIMONTON, J.    This is a libel for salvage.    The Eleanor, a three-mast schooner, between three and four hundred tons burden, went ashore on the ocean beach of North island, on the night of 21st February, 1890. North island is on the northern side of the Georgetown bar.    The weather was perfectly calm, and so continued for the whole period of her stay on the beach.    She lay quietly all night.    The next morning, as the hour of high tide (10 o'clock) approached, efforts were made to get her off with a kedge anchor.    She could not use her heavy anchors.    Those efforts failed.    They were renewed at the succeeding high tide, with the same result.    On that afternoon the master of the schooner had requested a person who told him that he was on his way to Georgetown to send to him the tugs Congdon and Brewster, the only sea tugs in that port.    The

Congdon did not get the message, but came down of her own accord, and stopped at the landing on the inside beach of North island. Her master walked across the island; saw the master of the schooner; refused his request to pull the schooner off that night, as it was too dangerous; and promised to come down the next morning with his tug and the Brewster. He went back in his tug to Georgetown. On the next morning the efforts on the part of the schooner to get off were renewed. The two tugs came to her. The Eleanor sent a small boat to the Congdon, and got a 100-fathom line, which was attached to her. A line was passed from the Congdon to the Brewster. Both tugs pulled straight ahead, and in about 15 minutes the schooner got into deep water, was carried over the bar, and towed to Georgetown. The Eleanor, when pulled off, was lying on a beach open to the Atlantic. At dead low water, she was dry. The high tide came all around her. She could use only her kedge anchor, and had made two unsuccessful attempts to get off. An easterly wind put her on a lee shore. A westerly wind lowered the tide, which began to neap at that time. She was not in immediate or imminent danger, but at any time a gale would expose her to great danger. This was a salvage service. The tugs going to her rescue went out over the main entrance of Georgetown bar after sunrise. When out at sea, they steamed around, and got opposite to the Eleanor. Where she was, the beach sloped gradually, until it got into deep water. The chart put in evidence shows a shoal, between which and the schooner ran a slue. At this point the water in the slue had good depth, 19 and 15 feet, shoaling, however, as it approached the bar. The Congdon and Brewster, avoiding the shoal, entered the slue, and the former approached the schooner, stern foremost. She was under perfect command, and, at the suggestion of danger of striking bottom, at once and easily got away. Her line was passed to the Eleanor in the latter's boat. The tugs pulled straight ahead, — that is, away from the beach, — and the Eleanor floated in the deep part of the shore without serious difficulty, if any difficulty at all. So, although this was salvage service, it was rendered without exposure of life, and with a minimum of danger to property. Indeed, with the skillful master and the pilots on the Congdon, she was at no time in danger, and the Brewster ran no risk at all. It is true that the tugs were in a slue scarcely, if ever, used by tugs. But they were not in the shoal part of the slue, which rendered it dangerous for vessels of their draught. The Eleanor is valued by libelant at $16,000; by her master, at $6,000 or $8,000. She is 12 or 14 years old. Her cargo is estimated at $4,000. The Congdon is worth, say, $20,000, and the Brewster, $15,000. Taking all these facts into consideration, let the tugs each have $300, to be assessed *pro rata* on vessel, cargo, and freight. If the parties cannot agree as to the rate, upon application made I will refer it. The libelants who own the tugs, on the day following the rescue, stated the price they wanted. It was large; but the respondent gave no answer until the Saturday following, when he refused, and offered a very much smaller sum. His schooner was then ready for sea. Libelants had no course open but this suit. Respondents must pay the costs. Let an order be entered accordingly.